1       UNITED STATES OF AMERICA
       UNITED STATES DISTRICT COURT
2       MIDDLE DISTRICT OF FLORIDA

3
         - - -
4     HONORABLE JAMES S. MOODY, JR.
    UNITED STATES DISTRICT JUDGE PRESIDING
5         - - -

6 UNITED STATES OF AMERICA )
             )
7     PLAINTIFF,   )
             )
8 VS.         ) NO. 8:15-cr-363-T-30AEP
             )
9 JORGE MARTIN MARTINEZ-  )
 MENDOZA,       )
10           )
     DEFENDANT.   )
11 _____)

12

13        **<u>SENTENCING</u>**

14   REPORTER'S TRANSCRIPT OF PROCEEDINGS
        **MARCH 8, 2016**
15       TAMPA, FLORIDA

16

17

     MELISSA A. PIERSON, CA CSR 12499,
18     IL CSR 084.003138, RPR
     FEDERAL OFFICIAL COURT REPORTER
19    801 N. FLORIDA AVENUE, 2ND FLOOR
      TAMPA, FLORIDA 33602
20     PH:  (813)301-5336
     USDCtranscripts@gmail.com

21

22

23

24

25

```
1
     APPEARANCES OF COUNSEL:
2
     ON BEHALF OF PLAINTIFF:
3            LEE BENTLEY
             UNITED STATES ATTORNEY
4            BY:  MR. JAMES PRESTON, ESQ.
             ASSISTANT UNITED STATES ATTORNEYS
5            400 N. TAMPA STREET
             ST. 3200
6            TAMPA, FL 33602
             (813) 274-6000
7            JAMES.PRESTON@USDOJ.GOV

8
     ON BEHALF OF DEFENDANT:
9            CHARLES E. LYKES, JR.
             BY:  MR. CHARLES E. LYKES, JR., ESQ.
10           300 TURNER STREET
             ST. 2
11           CLEARWATER, FL 33756
             (727) 441-8308
12           CELYKES@GMAIL.COM

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                    TAMPA, FLORIDA; MARCH 8, 2016

 2                            - - -

 3               (COURT IN SESSION AT 9:02 A.M.)

 4          THE COURT:  Good morning.  Identify yourselves for

 5     the record, please.

 6          MS. PRESTON:  Good morning, your Honor.  Jim

 7     Preston for the United States.

 8          MR. LYKES:  Good morning, your Honor.  Charles

 9     Lykes for Mr. Martinez, who is seated next to me.

10          THE COURT:  Swear the interpreter.

11          MADAM CLERK:  Please rise and raise your right

12     hand.

13               (Interpreter sworn.)

14          THE INTERPRETER:  I do.

15          MADAM CLERK:  Please state your name for the

16     record.

17          THE WITNESS:  Etienne VanHissenhoven.

18     E-T-I-E-N-N-E, V-A-N-H-I-S-S-E-N-H-O-V-E-N.

19          MADAM CLERK:  Thank you.

20          THE COURT:  Swear the Defendant, please.

21          MADAM CLERK:  Sir, please rise and raise your right

22     hand.

23               (Defendant sworn.)

24          THE DEFENDANT:  I swear.

25          MADAM CLERK:  Please state your name and spell your
```

4

```
 1    first and last name for the record.

 2              THE DEFENDANT:  Jorge Martin Martinez Mendoza.

 3              MADAM CLERK:  Please spell your first and last name

 4    for the record.

 5              THE DEFENDANT:  I only know how to do the first

 6    one, J-O-R-G-E.

 7              THE COURT:  All right.  Do you recognize your name

 8    when you see it?

 9              THE DEFENDANT:  Yes.

10              THE COURT:  Show him the front of the pre-sentence

11    report.

12              MR. LYKES:  Your Honor, we went over it together in

13    Citrus County, but I can't seem to put my hands on it right

14    now.

15    (Defendant peruses document.)

16              THE COURT:  Thank you.  Point to his name, please.

17    Show him where his name is.  Is your name spelled correctly?

18              THE DEFENDANT:  Yes.  Yes.

19              THE COURT:  All right.  Thank you.  You may have a

20    seat.

21              Mr. Martinez, on November 23, 2015, you entered a

22    plea of guilty to Count one of the indictment charging you

23    with conspiracy with the intent to distribute five kilograms

24    or more of cocaine while on board a vessel subject to the

25    jurisdiction of the United States in violation of Title 26 --
```

```
 1   46, United States Code, Sections 70503(a), 70506(a) and (b),

 2   and Title 21, United States Code, Section 960(b)(1)(B)(ii).

 3   The Court has previously accepted your guilty plea and has

 4   adjudged you guilty of that offense.

 5          We've now reached the stage in the proceedings

 6   where it's my duty to address certain questions to you and

 7   your lawyer, as well as the lawyer for the Government.
```

**JORGE MARTIN MARTINEZ-MENDOZA**

```
 9   Called as a witness herein, having been first duly sworn

10   was examined and testified as follows:
```

**EXAMINATION**

```
12  BY THE COURT:

13  Q.   Have you had the opportunity to read and discuss the

14  pre-sentence report?

15  A.   Yes.

16  Q.   Do you agree that the facts contained in the report are

17  accurate?

18         MR. LYKES:  Your Honor, may I speak on just a

19  couple things.  They say he's 5'7.  I think it's pretty much

20  -- but as you see, he's only 5', at the most.  I think that

21  was probably just boilerplate; and his mother is Estela, with

22  one L, not two L's, and he pointed that out to me.

23         As far as the facts go, we agree with the amounts

24  that were on board and what have you, but we reserve some

25  right to make some argument about that later in the
```

1   proceedings.  Thank you.

2   BY THE COURT:

3   **Q.**   All right.  Mr. Martinez, after correcting the spelling

4   of your mother's name to have one L, and correcting your

5   height to be what five-foot --

6           MR. LYKES:  I would say 5' or 5'1.

7   BY THE COURT:

8   **Q.**   All right.  Correcting your height to 5'1, do you agree

9   that the facts contained in the report are accurate?

10  **A.**   Yes.

11  **Q.**   Do you or your lawyer wish to make any objections to the

12  probation officer's applications of the guidelines?

13          MR. LYKES:  Do I do that now, your Honor?

14          THE COURT:  Did you have any objections to the

15  guidelines?  Make them now.

16          MR. LYKES:  Yes, your Honor.  First of all, I'm

17  well aware of the relevant conduct.  That's been the law for

18  a long time, but nevertheless, I still have a problem when

19  someone like him, who boards a vessel that is in transit,

20  with no idea how much cocaine is on it, and several days

21  later it's apprehended on the high seas, and he still doesn't

22  know how much until it's weighed, he's charged with five

23  kilograms or more, that satisfies the requirement for the

24  minimum mandatory, but to elevate him all the way to level

25  38, based on something he had no knowledge or control of, and

1  I think he'll tell you when he addresses you that he

2  certainly wouldn't have embarked on this If he had any idea.

3  He's on a semi-submersible, another thing he didn't know

4  about.  He simply wouldn't have taken part in this operation

5  had he had any idea there was so much involved.

6          Because he's aware that the amount, you know,

7  governs the punishment -- should I make all my arguments at

8  this time as far as the scoring goes?

9          THE COURT:  Where did he board the boat?

10          MR. LYKES:  He boarded the boat in Mexico.  He was

11  recruited by an individual who was a wealthy person.

12  Mr. Martinez is very hard working, and I'll show you some

13  pictures and some records of his life that I got from his

14  wife.  He's a very hard working automobile mechanic.  He's

15  raising three children.  He's doing -- or trying to do right

16  by them.  Obviously it's very meager in Mexico City.  If you

17  make a couple $100 in a month working hard every day, you're

18  lucky.

19          So this fella comes by, doesn't even know the guy's

20  name.  He comes by, buys him beer every now and then, and

21  takes him to dinner, and convinces him he can do -- make a

22  lot of money if he takes this one transit and he agrees to do

23  it.  He's aware there are probably drugs involved, but he

24  doesn't know how much, and says, "Gee, I can do a lot better

25  by my family if I just go out for three weeks and take this

```
 1    voyage and come back."  That's probably as much as he makes
 2    in five years.
 3              THE COURT:  Where was the voyage going?
 4              MR. LYKES:  Where did you get on the boat and where
 5    did you understand you were going?
 6              THE DEFENDANT:  I got on and was told I was going
 7    to Mexico.
 8              MR. LYKES:  How did you get --
 9              THE DEFENDANT:  Through the person who was telling
10    me about the trip.
11              THE COURT:  So he got on in Colombia, not Mexico?
12              MR. LYKES:  Right.  Sorry.  I misspoke before.
13    Generally, the gist of that is just the facts of the case.
14              THE COURT:  How did he get to Colombia?
15              MR. LYKES:  That's what I was just asking him.  How
16    did you get to Colombia?
17              THE DEFENDANT:  I came from the airport.  I came
18    through Medellin, and they were waiting for me there, and
19    then I went to Calle, and then they drove me on the road in a
20    car all day, and then the afternoon we got to a boarding
21    place, and there were lots of people.  There were houses, but
22    I don't know exactly what part of Colombia it was, and then I
23    got on a boat.  Then they -- we went about a half hour to the
24    ocean still, and we got to some sort of an island, and there
25    were a lot of trees and stuff like that, and then there was
```

1   -- where the boat -- where the ship was, and that's where it

2   all began.

3          MR. LYKES:  Were any drugs loaded onto the boat

4   after you got on?

5          THE DEFENDANT:  The first one?

6          MR. LYKES:  No, the boat, the semi-submersible were

7   the drugs already on the boat when you got on it?

8          THE DEFENDANT:  They were, yes.

9          MR. LYKES:  Were you ever told how much was on it?

10         THE DEFENDANT:  Nothing.

11         MR. LYKES:  And basically, I mean, that's it, your

12  Honor.  I think you go back to the Magna Carta, Western law

13  has been we punish people for what they know they did wrong.

14  We punish people for their intent, for knowledge, and we

15  don't punish them for things they don't know about, and

16  that's what's always given me a problem with relevant

17  conduct, and probably just another voice in the air saying

18  that, but I do wish -- do wish to make that objection.

19         Also, your Honor, the same with the

20  semi-submersible, he had no idea what kind of vessel it was

21  going to be.  As he told me, he would never have gotten on a

22  semi-submersible for the simple fact it's dangerous.  As a

23  matter of fact, they ended up stranded at-sea and needed

24  help.

25         THE COURT:  So some guy he buys beer for happened

1    to wander by his shop and suggest to him he could go to

2    Colombia, and get on a boat coming to Mexico and earn a

3    little money.  That's all he knew?

4            MR. LYKES:  How much money did you get in cash from

5    this man?

6            THE WITNESS:  He gave me 30,000 Mexican pesos.

7            MR. LYKES:  Which I think now is about $3,000, and

8    is as much as he makes in a year.

9            THE COURT:  Why do they need somebody from Mexico

10   to fly down to Colombia?  There are plenty of people standing

11   on the docks in Colombia waiting to get on these boats.

12           MR. LYKES:  I'm not sure and he's not sure.

13           THE COURT:  He doesn't know?

14           MR. LYKES:  The FBI, the agents felt as though they

15   wanted to have a Mexican representative in case there were

16   situations where Mexicans and Colombians would be dividing

17   money, but he wasn't aware of that.  This was his first time.

18   He understood that he was in training for some purpose.

19           THE COURT:  It sounds like he's a load guard.

20           MR. LYKES:  A what?

21           THE COURT:  A load guard.

22           MR. LYKES:  Perhaps so, which leads me to my next

23   argument, is -- well, two arguments I would like to make.

24   First of all, I think of those on board the vessel, there's

25   probably no one less culpable than him, and I would ask your

1    Honor for a minor role adjustment.

2            I would also ask your Honor to consider, even if

3    all my other arguments just fly away in the wind, that

4    perhaps he's over scored.  Everything together, he's over

5    scored, and if your Honor could see fit to reduce him a few

6    levels as a result of that, he's grossly over scored, I would

7    appreciate it.  I'm going to ask you, please, to reserve the

8    comment on that until you have a chance to have me read the

9    statement they wrote and was translated by the interpreter.

10           And also, to identify a few of these letters and

11   what have you.  We've got report cards from his daughter, and

12   a few pictures of he, and his daughter and his wife.

13           So let me read this statement:

14           "Honorable James S.  Moody, Jr., thank you for your

15   kind attentiveness by receiving and reading this letter.  I

16   am very grateful because I, Jorge Martinez Mendoza, would

17   like to express in a most personal and direct way an apology

18   for the crime that brings me to your court.  In these long

19   six months away from my country and my family I have not

20   stopped thinking about how remorseful I am.  Your Honor, I

21   would like to not only express my apologies to you and the

22   Government of the United States, but also would like you to

23   hear my own voice and see in writing from my own hand the

24   kind of person I am, and so that you would not only have a

25   negative view of my person.

1        I would like to start by saying that I come from a

2    family of four siblings and two exceptional parents, and they

3    are Martin Martinez-Jimenez and Estela Mendoza-Bautista, a

4    family of many moral values and much love.  I am, as well,

5    the husband of a great lady Cinthia Martinez-Mena, who I love

6    very much; and lastly, I am the father of three beautiful

7    children, Jorge Osvaldo, 19 years old, Monserrat Abigail,

8    15 years old, and Dasha Airam, four years old, who are my

9    life and utter happiness.  With all this, I wish you to see

10   that I am not a bad person who looks for trouble or looks to

11   harm others, rather the contrary.  I am a very honest person,

12   noble and hard working, which is why the situation I am in

13   pains me because I have never gone against law.

14       I know that I committed a very great mistake, and I

15   am totally conscious of it, however, allow me to tell you

16   that if it were not for poverty and below-salaries in my

17   country, I would never have even thought of committing a

18   mistake like this.

19       Honorable Judge James S. Moody, Jr., as a father, I

20   could not see my humble family suffer day by day, nor could I

21   not see how even without my great efforts at work I was not

22   able to offer them a home of their own, courses and schools

23   for my children, medical services and food.

24       Aside from all of this, I help my humble parents

25   with a little money since they are too old to work.  What

father or son would not give his life for his family.

As you can see, your Honor, all these are problems that a person of humble origins faces.  It makes one fall into bad situations that cannot -- that can affect the whole family.  I can assure you that if I had not been in this situation, I would never have even thought of making this terrible trip.

As you know, I am a mechanic in my country of Mexico, and thank God a very good and professional mechanic, and the bosses at work can attest to this.  I have always dreamed of buying a taxi, and working as a taxi driver and creating my own taxi company.  With this hope and the vision of seeing my family happy, I made the decision to take this trip.  It never crossed my mind to do this for a profit without thinking about my family or to do harm.  That I can swear to you.  Even so, I cannot stop thinking that it was a great mistake and I feel very remorseful.

You know, during these months that I have been locked up, I have not stopped writing letters that I would have liked to send you.  However, it was not until today, (I believe he wrote this about a month ago) that I decided to send you mine.  All of them coincide in four points that I would like you to know.

One, apologize to you and the Government of the United States for what happened.

1          No. 2, acknowledge my guilt.

2          No. 3, express how remorseful I feel.

3          No. 4, promise to you that I will never again

4     commit a mistake like this, even if I find myself in

5     difficult situations.

6          Again, I thank you for the time you took to read

7     this letter and get to know me from a human and humble point

8     of view.  I wish to attest that everything I say in this

9     letter is true and from the bottom of my heart.

10         I also hope that my cooperation with authorities

11    was useful to them.  I ask your Honor that at the time of

12    handing down my sentence, to have compassion and mercy upon

13    me.  We are all human beings and we make mistakes, however, I

14    learned from my mistakes and I will not repeat them.

15         Thank you for your kindness.  May God guide you and

16    protect you always."  Signed by Jorge Martin Martinez

17    Mendoza.  I would like to offer this.

18         THE COURT:  Well, you read it into the record.  So,

19    it's not necessary to put it into evidence.

20         MR. LYKES:  I have a series -- if I could approach?

21         THE COURT:  All right.

22         MR. LYKES:  I have a series of documents, and

23    please forgive that they are not necessarily in order or easy

24    to describe to you, but they are just various things I'm

25    going to ask him to identify, maybe report cards of his

1    children, pictures.  I asked his wife if she would send them

2    to me.  So with the magic of email and electronic media we

3    can now do these things.  Would you tell us what this means.?

4          First off -- he's seen them -- they were -- this is

5    the first time.  They were downloaded last night.  Can you

6    tell us what this is?

7          THE  DEFENDANT:  It's a letter from my wife.

8          MR. LYKES:  And basically says --

9          THE  DEFENDANT:  That she is my wife, and that I

10    have three children with her.

11          MR. LYKES:  And this is?

12          THE  DEFENDANT:  I can't see it.

13          MR. LYKES:  It's difficult to see.

14          THE  DEFENDANT:  That I work at a mechanic shop.

15          THE  INTERPRETER:  "Through this letter we make it

16    known that Martin Martinez Mendoza for the last four years

17    has worked with us, working as a mechanic assistant.  He has

18    always shown excellent behavior, is responsible and honest.

19    He helps doing diverse activities that have to do with this

20    shop, and we issue this at the request of the interested

21    party hoping that it complies with what is expected of it.

22          To whom it may concern:  Mexico DF, December 9,

23    2015.  Through this letter we wish to completely recommend

24    Jorge Martin Martinez Mendoza, since we have known him for

25    several years, and he has always demonstrated being a

1    responsible, hard working person, a good husband and above

2    all, a good person.  We signed the current letter for

3    anything that him or his wife deem necessary, and we add our

4    names, and our addresses, and phone numbers for any further

5    information that you need.  Thank you."

6           MR. LYKES:  Who is this from?

7           THE INTERPRETER:  This is from Gloria Mena Moreno

8    Wagner, Lucille Galvan Ortiz Wagner, Luis Angel Romero

9    Garrido Verdi, Antonio Penilla, Viancey Cervantez Sanchez,

10    Juan Martinez Anaya, Guillermo Castaneda Verdi, Estefan

11    Garrido (inaudible), Brisa Selene Huerta Vazquez Verdi,

12    Estela Mena Moreno, Sandra Ivette Garcia Perez Verdi.

13           MR. LYKES:  Your Honor, I must have ten of those

14    from relatives and acquaintances of his, and I'll just kind

15    of skip through them, but let's see.  I must have at least a

16    dozen of those, but I've got some pictures here.

17           THE COURT:  I reviewed the pictures already.  If

18    you need more than 30 minutes, you need to notify the Court

19    in advance.

20           MR. LYKES:  Okay.  Well, your Honor, I think where

21    I'm going is clear.  I think his background is clear.  He's a

22    good man that made a single mistake.  Because it's a single

23    mistake, when he goes to the Government and says, "Well, I

24    want to cooperate with you, and I want to do everything I can

25    to help solve this," he doesn't know enough to help.  So it

```
1    just puts him in a real hard position here.  I ask your Honor

2    to extend to him any kindness, or mercy, or consideration

3    that you can give this case, because I believe I'm

4    representing a very good man in this matter.  Thank you.

5             THE COURT:  All right.  Well, Mr. Lykes, what I'm

6    having a hard time believing is that a drug organization in

7    Mexico would pick up somebody that they don't trust to a

8    great degree and send him down to Colombia to be a load

9    guard.

10            MR. LYKES:  Well, I think that was the purpose of

11   the fairly long-term recruitment.  How long did you know this

12   individual before you went --

13            THE COURT:  Mr. Lykes, what I'm saying, I don't

14   think they just picked somebody up off the street for the

15   first time and make him a load guard.  There's a reason they

16   trust somebody.

17            MR. LYKES:  How did you come to know this man?

18            THE DEFENDANT:  Between where I live and where I

19   work there is a bar, and I go by it every time I'm at work,

20   and every weekend it was full, and of course, I know

21   everybody in the neighborhood.  I know who belongs and who's

22   not from there, and I saw him, and I knew that he wasn't from

23   the neighborhood.  Since everybody there knows me, we talk.

24   They buy me a beer, whatever, and that's where I met him.

25            MR. LYKES:  Your Honor, I think he would be obliged
```

1    to answer any question you had for him.  He's very handy.

2            THE COURT:  Mr. Martinez, would you like to say

3    anything in addition to what you wrote in your letter?

4    You're not required to, but you may if you wish.

5            THE DEFENDANT:  Well, I ask forgiveness for what I

6    did, and that's it.  I don't have anything else.  Nothing

7    else to say.

8            THE COURT:  All right.

9            MR. LYKES:  Thank you, your Honor.

10            THE COURT:  Anything from the Government?

11            MS. PRESTON:  Judge, I think you made some of the

12    points for me already.  It just defies logic and common sense

13    that the Mexican side of this venture would put a

14    non-trusted, ignorant individual, give him responsibility

15    over almost 6,000 kilograms of cocaine.  All the Defendants

16    -- I ask you don't give him a minor role.

17            THE COURT:  I'm not going to give him a minor role

18    for a load guard.  Anything further from the Defense?

19            MR. LYKES:  No, your Honor.

20            THE COURT:  The Court adopts the factual statements

21    as amended in the pre-sentence report, and the guideline

22    applications contained therein as its finding of fact, and

23    determines that the advisory guidelines are:

24            Total offense level 35, criminal history

25    category 1, which calls for imprisonment of 168 to

1    210 months, supervised release of five years, a fine of

2    $20,000 to $10 million, and a $100 special assessment.

3           Do you know of any reason why the Court should not

4    now proceed with imposition of sentence?

5           MS. PRESTON:  No, your Honor.

6           MR. LYKES:  No, your Honor.

7           THE COURT:  The Court has asked the Defendant why

8    judgment should not now be pronounced, and has heard no cause

9    to the contrary, and Mr. Martinez having made a statement on

10   his behalf together with his lawyer, and the Court having

11   reviewed the pre-sentence report and considered the advisory

12   guidelines, and the factors of 18 USC, Section 3553, it is

13   now the judgment of the Court that the Defendant,

14   Jorge Martin Martinez Mendoza is hereby committed to the

15   custody of the Bureau of Prisons to be in prison for a term

16   of 168 months.

17          Upon release from imprisonment, the Defendant shall

18   serve a five-year term of supervised release.

19          While on supervised release, the Defendant shall

20   comply with the standard conditions adopted by the Court in

21   the Middle District of Florida.

22          If the Defendant is deported, he shall not re-enter

23   the United States without the express permission of the

24   appropriate governmental authority.

25          The Defendant shall cooperate in the collection of

1    DNA as directed by the probation officer.

2            The mandatory drug testing requirements of the

3    Violent Crime Control Act are imposed.

4            The Court orders the Defendant to submit to random

5    drug testing not to exceed 104 tests per year.

6            Based on the financial status of the Defendant, the

7    Court waives imposition of a fine.

8            The Defendant shall pay to the United States a

9    special assessment of $100, which is due immediately.

10           The Court finds that the sentence imposed is

11   sufficient, but not greater than necessary to comply with the

12   statutory purposes of sentencing.

13           The Court has accepted the plea agreement because

14   it is satisfied that the agreement adequately reflects the

15   seriousness of the actual offense behavior, and that

16   accepting the plea agreement will not undermine the statutory

17   purposes of sentencing.

18           Under the plea agreement, the Defendant entered a

19   guilty plea to Count one, in return for the dismissal of

20   Count two.  Therefore, in accordance with the plea agreement,

21   it is ordered that Count two of the indictment be dismissed

22   as to this Defendant.

23           The Court having pronounced sentence, does Counsel

24   for the Defendant or the Government have any objections to

25   the sentence, or to the manner in which the Court pronounced

1    sentence, other than those previously stated for the record?

2              MS. PRESTON:  No, your Honor.

3              MR. LYKES:  None other than those previously stated

4    for the record, your Honor.  I think we gave you all of

5    those.

6              THE COURT:  The Defendant is hereby remanded to the

7    custody of the United States Marshal to await designation by

8    the Bureau of Prisons.

9              Does he want Coleman?

10             MR. LYKES:  Your Honor?

11             THE COURT:  Does he want Coleman Penitentiary?

12             MR. LYKES:  He would, yes.  He would like --

13             THE DEFENDANT:  Actually, a different one.

14   Fort Dix.

15             THE COURT:  Okay.  I'll recommend Fort Dix.

16             Mr. Martinez, to the extent permitted by your plea

17   agreement you have the right of appeal from the judgment and

18   sentence within 14 days from today.  Failure to appeal within

19   the 14 days would be a waiver of your right to appeal.

20             You have in front of you a form entitled

21   Declaration of Intent to Appeal, together with a stamped

22   envelope addressed to the Clerk's office.  Does he have that

23   form in front of him?

24             MR. LYKES:  He does, your Honor.

25             THE COURT:  All right.  That form states whether

1     you do or do not wish to file an appeal.  It is written in

2     English on one side and Spanish on the other.  I direct you

3     to complete the form and mail it into the Clerk's office at

4     the end of the 14-day appeal period.  Don't give it to your

5     lawyer.  It's up to you to return the form.

6              If you do not return the form, I will accept that

7     as an acknowledgement that you do not wish to file an appeal

8     and that that was an informed or voluntary choice on your

9     part.

10             The Government also has a right to file an appeal

11    from this sentence.

12             You're entitled to the assistance of a lawyer in

13    taking an appeal, and if you are unable to afford a lawyer,

14    one will be provided for you.

15             If you are unable to afford the filing fee, the

16    Clerk of the Court would be directed to accept the notice of

17    appeal without such fee.

18             All right.  We are adjourned.

19             THE COURT:  Ariana, put these documents from the

20    Defense in evidence as Defendant's Composite Exhibit 1.

21    (Court adjourned at 9:38 a.m.)

22

23

24

25

1                    CERTIFICATE OF REPORTER

2

3    COUNTY OF HILLSBOROUGH    )

4                             )  SS.

5    STATE OF FLORIDA          )

6

7    I, MELISSA A. PIERSON, OFFICIAL COURT REPORTER, REGISTERED

8    PROFESSIONAL REPORTER, IN AND FOR THE UNITED STATES DISTRICT

9    COURT FOR THE MIDDLE DISTRICT OF FLORIDA, DO HEREBY CERTIFY

10   THAT I REPORTED, STENOGRAPHICALLY, THE FOREGOING PROCEEDINGS

11   AT THE TIME AND PLACE HEREINBEFORE SET FORTH; THAT THE SAME

12   WAS THEREAFTER REDUCED TO TYPEWRITTEN FORM BY MEANS OF

13   COMPUTER-AIDED TRANSCRIPTION; AND I DO FURTHER CERTIFY THAT

14   THIS IS A TRUE AND CORRECT TRANSCRIPTION OF MY STENOGRAPHIC

15   NOTES.

16

17

18   DATE:  5/11/2016

19

20   S:/MELISSA A. PIERSON

21   MELISSA A. PIERSON, CA/CSR 12499

22   IL/CSR 084.003138, RPR

23   FEDERAL OFFICIAL COURT REPORTER

24

25